(January 13, 1893.)

BALLENTINE v. WILLEY, GOVERNOR, ET AL.

[31 Pac. 994.]

LEGISLATIVE APPORTIONMENT—CONSTITUTIONAL CONSTRUCTION—LEGIS-
LATIVE REPRESENTATION.—1. An act entitled "An act providing for the apportionment of the legislature," approved March 13, 1891 (1st Sess. Laws, p. 195), divides the state into senatorial and representative districts, and declares the representation which each district is entitled to. That, because of an act creating Alta and Lincoln counties out of territory theretofore comprising Alturas and Logan counties having been declared unconstitutional, said apportionment act failed to provide representation for two existing counties, Alturas and Logan, and provided representation for two counties having no existence. *Held,* unconstitutional.

SAME—ACT CONSTRUED—WHEN PART INVALID.—2. When an act having but one object is in part valid and in part invalid, and the parts are so mutually connected with and dependent upon each other as to conditions, considerations, or compensations for each other as to warrant the belief that the legislature intended them as a whole, and, if all could not be carried into effect, the

legislature would not have passed the residue independently, the act must be held void.

SAME—PROPER BASIS FOR REPRESENTATION.—3. The legislature is prohibited from passing an apportionment act which does not give substantially just and equal representation to the people of each county, based upon either the voting or entire population, or upon some other fair basis.

(Syllabus by the court.)

PETITION by James M. Ballentine for a writ of mandate.

Texas Angel and Oroville E. Jackson, for Plaintiff.

The relator contends that the state board of canvassers, under provisions of the statute, had a ministerial duty to perform with respect to the returns in their hands from Ada county, showing the votes cast in said county for the said J. M. Ballentine. It is within the power of the court at this time by its mandate to compel the performance of such duties. (High on Extraordinary Legal Remedies, p. 49, sec. 60; *In re Strong,* 20 Pick. (Mass.) 484; *People v. Rines,* 27 Ill. 242; *People v. Hilliard,* 29 Ill. 419; *Browns v. O'Brien,* 2 Ind. 423; *Hisler v. Cannon,* 39 Ind. 488; *State v. Circuit Judge of Mobile,* 9 Ala. 338; *State v. Gibbs,* 13 Fla. 55; *Ellis v. County Commissioners of Barton,* 2 Gray, 370; *Clark v. McKenzie,* 7 Bush, 523; *People v. Mattison,* 17 Ill. 167; *State v. Lawrence,* 3 Kan. 95; *Smith v. Lawrence,* 2 S. Dak. 185, 49 N. W. 7.) The statute imposes a purely ministerial duty upon the board. (*State v. Thayer,* 31 Neb. 82, 47 N. W. 704; *Ex parte Elliott,* 33 S. C. 602, 12 S. E. 423; *State v. Crawford,* 28 Fla. 441, 10 South. 118, 7 Iowa, 186.) It is a well-established rule of construction that the courts will presume a legislative act valid and constitutional, and will construe it as such, if possible. (Sutherland on Statutory Construction, sec. 331; Cooley's Constitutional Limitations, 223.) It is another well-established rule of construction that in case the court is in doubt as to the constitutionality of an act, such doubt must always be solved in favor of its validity. (Cooley on Constitutional Limitations, 220; *Wellington, Petitioner,* 16 Pick. 95, 26 Am. Dec. 631; *Brown v. Buzan,* 24 Ind. 194; *Cooper v. Talfair,* 4 Dall. 18; *Dow v.*

*Norris,* 4 N. H. 16, 17 Am. Dec. 400; *Flint R. Steamboat Co.
v. Foster,* 5 Ga. 194, 48 Am. Dec. 248, and note.) When the
unconstitutional part of a statute is stricken out, and that which
remains is complete in itself, and capable of being executed
in accordance with the plain legislative intent, wholly independ-
ent of that which was rejected, it must be sustained. (*Don-
nersberger v. Prendergast,* 128 Ill. 229, 21 N. E. 1.)

Wood & Wilson and Silas W. Moody, for Defendants.

If a statute attempts to accomplish two or more objects, and
is void as to one, it may still be in every respect valid as to
the other. But, if its purpose is to accomplish a single object
only, and some of its provisions are void, the whole must fail
unless sufficient remains to effect the object without the aid of
the invalid portion. (*Warren v. Mayor,* 2 Gray, 84; *State v.
Commissioners,* 5 Ohio St. 497; *Slauson v. Racine,* 13 Wis.
398; *Allen Co. Commrs. v. Silvers,* 22 Ind. 491; *Eckhert v.
State,* 5 W. Va. 515; *Allen v. Louisiana,* 103 U. S. 80.)

Per CURIAM.—This is an application made by J. M.
Ballentine for a writ of mandate to compel the defendants, as
the state board of canvassers, to proceed to examine and make
a statement of the whole number of votes cast at the election
held November 8, 1892, for the office of member of the House
of Representatives for Ada county, and make the proper return
thereof to the Secretary of State, and to compel the Secretary
of State to issue a certificate of election to the plaintiff to the
said office of member of the House of Representatives from
Ada county. An alternative writ was issued, and on the re-
turn thereof the defendants A. J. Pinkham, as Secretary of
State, Silas W. Moody, as state auditor, and Frank R. Coffin,
as state treasurer, appeared, and demurred to the petition.
The defendants Norman B. Willey, as governor, and George H.
Roberts, attorney general, appeared, and by answer admitted
the allegations of the petition. The case was heard upon the
demurrer of defendants Pinkham, Moody, and Coffin.

This case arises out of an act passed by the first legislature
of the state of Idaho, entitled "An act providing for the ap-

portionment of the legislature," approved March 13, 1891 (1st Sess. Laws, p. 195). Said act was passed under and by virtue of the provisions of section 4 of article 3 of the constitution, which section provides as follows: "The members of the legislature shall be apportioned to the several legislative districts of the state in proportion to the number of votes polled at the last general election for delegate to Congress, and thereafter to be apportioned as may be provided by law; provided, each county shall be entitled to one representative." At the date of the approval of said apportionment act the state of Idaho was composed of eighteen counties, and said act declared the representation that each of said eighteen counties was entitled to. Prior to the approval of said apportionment act, an act was passed organizing the counties of Alta and Lincoln out of the territory theretofore included in the counties of Alturas and Logan, which act was thereafter declared unconstitutional by this court. After the act organizing the counties of Alta and Lincoln had been held unconstitutional, said apportionment act gave representation to two counties that had no existence, viz., Alta and Lincoln, and failed to give representation to two existing counties, viz., Alturas and Logan. The vital question for determination is the validity of said apportionment act, for upon the determination of that question depends partly, if not wholly, the right of the plaintiff to the issuance of the writ of mandate prayed for.

Counsel for plaintiff contend, regardless of the fact that the act creating the counties of Alta and Lincoln had been declared unconstitutional and void, that that part of said apportionment act which provides the representation for all counties except Alta and Lincoln should be held valid, and given effect, and that, as legislative representation for Alturas and Logan counties is not provided for by said act, they are entitled to the representation provided for them by the constitution; while the defendants Pinkham, Moody and Coffin contend that said act is unconstitutional and void, for the reasons that it provides legislative representation for nonexisting counties; that it fails to give representation to existing counties; and that the intent and object of said act was to

accomplish a single purpose only, to wit, that of making an apportionment of the entire state for legislative representation, and that without the void part the act cannot effect such purpose; and cite in support thereof several authorities. Counsel for plaintiff cite in support of their contention, Cooley's Constitutional Limitations, page 209. The author says: "It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it, but insufficient for others. In any such case the portion which conflicts with the constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional because it is not within the scope of legislative authority. It may either propose to accomplish something prohibited by the constitution, or to accomplish some lawful, and even laudable, object, by means repugnant to the constitution of the United States or of the state. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just, constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitu-

tional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand though the last fall.  The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance.  If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained."   This quotation from Cooley's Constitutional Limitations is found in plaintiff's brief, and was dwelt upon with emphasis and energy by counsel for plaintiff in their oral argument to the court.  It correctly states the rule of law which governs and should control in the construction of a statute valid in part and void in part.  Immediately following the above quotation that distinguished author says: "The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule.  If a statute attempts to accomplish two or more objects, and is void in one, it may still be in every respect complete and valid as to the other.  But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and, if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them."

Tested by the rule as laid down by Judge Cooley, should that part of the act in question which fixes the representation of the sixteen counties, therein named, be sustained?   Judge Cooley says (Cooley's Constitutional Limitations, sec. 211) : "The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of the rule.  But, if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless

sufficient remains to effect the object without the aid of the invalid portion." The question arises as to what was the intent or purpose of the act under consideration. Was its purpose to provide for the apportionment of but sixteen counties of the state? To ascertain the object of this act we will examine its title, for section 16, article 3 of the constitution provides that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." Referring to said act, we find that it is entitled "An act providing for the apportionment of the legislature." The title does not indicate that the object of the act was an apportionment of members of the legislature for sixteen counties of the state, but it does indicate that the act is intended as an apportionment for the whole state. Referring to the act itself to ascertain its object, we find that it divides the entire state, as the counties then existed, into senatorial and representative districts, and declares the representation that each of the eighteen counties is entitled to. The clear intent and object of said act was to apportion the entire state for legislative representation, and not for the apportionment of a part of the state only. Can an act having but one object—that of a complete apportionment of the entire state—when part of its provisions have become invalid, and for that reason it fails to apportion the entire state, stand when tested by the rule of law that, if the object of a statute is to accomplish a single purpose only, the whole must fail, unless sufficient remains to accomplish or effect the object of the statute without the aid of the invalid part? We think not. Strike out that portion of said act dividing Alta and Lincoln counties into senatorial and representative districts, and which declares the representation of each, does sufficient remain to effect or accomplish its object, its purpose? Most certainly not. Counsel for plaintiff concede that after striking out the invalid portion of said act sufficient thereof does not remain to accomplish or effect the purpose intended to be accomplished or effected by it, to wit, the apportionment of the entire state for legislative representation, but contend that, after striking out the void portion, the act remains valid so far as it goes toward making a complete apportionment of the state; and to make a complete apportionment the counties not mentioned in said act are

relegated to the constitution for their representation. They thus admit that the object of the act cannot be effected, with the invalid portions stricken out, without the aid of the constitutional apportionment. Therefore the entire act must be held void when tested by the rule of law that when a statute is intended to accomplish a single purpose only, and some of its provisions are void, the whole must fail, unless sufficient remains to carry into effect the object of the statute without the void part. We consider this rule of law as especially applicable to the case at bar.

In *Slauson v. City of Racine,* 13 Wis. 398, the learned court states the rule as follows: "And the only question left is what effect the invalidity of this provision should have upon the operation of the statute. It is undoubtedly true that parts of a statute may be unconstitutional, and yet other parts, capable of being executed independently, held valid. But the counsel for the plaintiff contend that where parts of a statute are unconstitutional, and other parts valid, the former being evidently designed as compensation for or inducements to the latter, so that the whole, taken together, warrant the belief that the legislature would not have passed the valid parts alone, the whole act should be held inoperative. This position is fully sustained by the case of *Warren v. Charlestown,* 2 Gray, 84, and seems to rest upon solid reasons. We think, also, it is fairly applicable to this case." In *Allen v. Louisiana,* 103 U. S. 80, Chief Justice Waite states the rule applicable to the construction of statutes like the one under consideration as follows: "It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that, if the parts are wholly independent of each other, that which is constitutional may stand, while that which is unconstitutional will be rejected." "But," as was said by Chief Justice Shaw in *Warren v. Charlestown,* 2 Gray, 84, "if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them. The point to be determined

in all cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible to give effect to what appears to have been the intent of the legislature, if those provisions were struck out." In *Commonwealth v. Potts,* 79 Pa. St. 164, the court says: "The section speaks as an entirety in its purpose, and not in parts, which may be severed without violence to the legislative purpose. Where, as here, the parts are so dependent that one cannot take effect without the other, so as to carry out the legislative intent, we cannot legislate by way of substitution." So in the case at bar the void portion of said act cannot be severed without violence to the legislative purpose or intent. In other words, the legislative purpose of said act cannot be accomplished by carrying into effect the valid portion thereof. In *City of Rochester v. Briggs,* 50 N. Y. 553, the court laid down the rule as follows: "It is a universal rule that, where a part of the statute is unconstitutional, that fact does not authorize the court to declare the remainder void, unless the provisions are so connected in subject matter, meaning, or purpose that it cannot be presumed that the legislature would have passed the one without the other." We think that it would be a very violent presumption to presume that the legislature would have passed said act had they not intended it to provide representation for every county in the state.

The principle announced in the authorities above cited very clearly illustrates the case at bar. We need only to ask the question, Would the legislature have passed the act in question had it not been the intention to effect the one purpose, to wit, to apportion the entire state for legislative representation? Would the legislature have passed an apportionment act leaving out the counties of Alturas and Logan, and, not only leaving them without any representation, but thereby reducing the number of members of the legislature to fifty? That it did not do so, and had no intention of depriving any part of the state of its proper representation, is apparent from the provisions of the act that was passed, and it will scarcely be contended by counsel who seek to uphold this act that the legislature had any such intention. An apportionment law which seeks to give its proper representation to every part of the state must neces-

sarily be an entirety, the one part compensating the other, and
the various parts thereof mutually dependent upon each other.
In no other way can a just and fair representation be given to
every part; and it is the history of such legislation that it re-
quires more skill, and the joint action of more minds, to make
a just and fair apportionment of the state, giving to each part
proper and just compensations for every other part, than for
any other class of legislation.  The constitution has, therefore,
wisely conferred this power upon the legislature alone.  The
counsel for plaintiff construe the rule as laid down by the em-
inent authorities above quoted to mean that, if an act having
but one intent, one purpose, contains provisions that are uncon-
stitutional, and that by reason thereof but one-half, or even less,
of such intent or purpose can be carried into effect by the valid
portion of such act, such valid portion should be given effect.
We cannot consent to such a construction.  The insurmountable
difficulty in the way of holding a portion of this act valid and
a portion invalid is apparent.  The governor, with a laudable
desire to enforce the law, when issuing his election proclamation
adopted a portion of the act in question, and, coming to the
counties surrounding Alturas and Logan, he found that said
act provided one senator for Alta and Custer counties.  The
governor could not give this senator to Custer and Alturas, be-
cause that officer, under the law, would represent a much
larger voting population than he would giving the senator
to Custer and Alturas, and a larger territory, also, which would
have been a new district; but he gave the senator to Custer
county, thus giving a senator to a smaller voting population and
territory, and thereby creating a new district not created by the
constitution or the law, and gave to Custer county one-half a
senator more than is given it by said apportionment act or the
constitution.  A similar condition exists as to other counties.
It will thus be seen that said apportionment act, as applied to
all counties but Alturas and Logan, cannot be carried into ef-
fect.  When the supreme court attempts to construe said stat-
ute, and apply it to all counties except Alturas and Logan, it
is met with the same difficulties that confronted the governor
when he came to issue his election proclamation.  But neither
the governor nor this court has any authority to make a single

new district, or to give any district additional representation, and any such attempt is unconstitutional and void. Had the legislature passed an apportionment act, in which one or more counties of the state were purposely omitted, and its constitutionality called into question, a very different question from that before us would be presented.

It is contended by counsel for plaintiff that two counties were omitted from the act under consideration, and thereby not given representation, and are therefore entitled to the representation given them by the constitution. The reply is that every county of the state, as they existed at the date of the approval of this act, was named therein, and provided with representation; and it appears that the counties of Alturas and Logan were omitted because of a belief of their nonexistence, and not because of an intention to allow them the representation provided for them by the constitution.

It is further contended that the only constitutional prohibition in regard to the apportionment of the members of the legislature is that each county shall be given one representative, and that, so long as the legislature provides that each county shall have one representative, the remaining members allowed by the constitution are left to the will of the legislature, and it may give them all to a single county, without regard to either the entire or voting population. An act apportioning the members of the legislature in accordance with that view would be a clear violation of the constitution. One of the very foundation principles of our government is that of equal representation, and the legislature is prohibited from enacting an apportionment law which does not give to the people of one county substantially equal representation to that given each other county in the state, based either upon the entire or voting population or upon some other just and fair basis. The reservation of rights by the people is broad enough to prohibit the legislature from passing an apportionment act which is manifestly unequal and unjust to the people of any portion of the state. It has authority to fairly apportion legislative representation, but it is prohibited from disfranchising. Whenever the legislature undertakes to deny the right of the people of any county a just and fair representation in the legislative department of the state, it is not

acting within the scope of its authority. The act under consideration shows that the legislature did undertake to make a just and fair apportionment for the entire state for legislation, and failed because of the unconstitutionality of an act creating Alta and Lincoln counties, and for no other reason.

Counsel for plaintiff contend that the law as laid down in the case of *Hampton v. Dilley,* ante, p. 427, 31 Pac. 807 (decided at the present term of this court), is very similar to the case at bar. The distinction between the cases is palpable. In the former case it is held that a person could not be subjected to punishment or deprivation of rights because he obeyed the law as it appeared in the statute, although the statute might be subsequently declared unconstitutional. In the case at bar the apportionment act was to all intents and purposes declared unconstitutional by the decision in the Alta-Lincoln case. The plaintiff herein is claiming rights under a law already declared unconstitutional. Because the governor or any other executive officer may have thought the apportionment act was still in force, however honest and sincere they may have been in such belief, is no reason why this court should sustain a statute which the court is satisfied is void. The effort of the governor to reconcile the differences between the apportionment by the statute and that made by the constitution, while perhaps commendable as an effort in behalf of what the executive believed to be the best interests of the state, nevertheless such action on his part of necessity involved the exercise of powers not germane to his office, but expressly prohibited by the constitution.

The plaintiff cites *State v. Van Duyn,* 24 Neb. 586, 39 N. W. 612, as an authority in his behalf. The question in that case was as to the constitutionality of an apportionment act passed in 1887, which failed to give Sarpy county any representation. The question was raised by an application for a writ of mandate to compel Van Duyn, as clerk of Saline county, to post election notices for senators and representatives in Saline county under the apportionment act of 1881, instead of the apportionment act of 1887, upon the ground that the latter act was void, for the reason that said act was not regularly passed by both houses of the legislature as provided by law. It appears that that part of the act which relates to Sarpy county had not passed both

houses of the legislature, and was held null and void. The act was regularly passed as to all counties except Sarpy, but for some reason it was not mentioned in said act as passed by the legislature, but by some means the name "Sarpy county" was inserted into the enrolled bill as signed by the governor. The court says: "The record tends to show that that portion of the act relating to Sarpy county was not passed by both houses of the legislature, perhaps not by either, and submitted to the governor, and because of this defect we are asked to declare the whole act unconstitutional." It will be observed that the court was asked to declare said act unconstitutional because the enrolling clerk or some one had inserted a provision concerning Sarpy county into said act, and the court says because of that defect "we are asked to declare the whole act unconstitutional." The court further says: "An act may be void in part and a portion of it valid. In such case the court, if it can separate that portion which is not in conflict with the constitution from that which is clearly in conflict therewith, and the former is complete in itself, and capable of enforcement, it will be sustained." We do not think the learned court states the rule of law applicable to the construction of a statute in part valid and in part invalid, the object of which is to accomplish a single purpose only. The rule as stated in that case falls short of the rule as stated by Mr. Cooley and the other authorities above cited. If the learned court had added: "But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion"—it would have stated the rule applicable to the case at bar. That case, if we rightly apprehend it, did not involve the construction of a statute that was in part valid and in part invalid. An apportionment act had been passed that left out or did not mention Sarpy county, and by some means the provision concerning Sarpy county appeared in the enrolled bill or printed statute. The record showed that that part relating to Sarpy county was no part of the act passed; therefore, that case did not involve the construction of a statute part valid and part invalid, for the reason that the part held to be invalid was not a part of the statute as passed by the legislature. The court holds that the

part relating to Sarpy county was no part of said act, and that the act as passed by the legislature was valid. We fail to see any reason for the application of the rule applicable to the construction of statutes in part constitutional and in part unconstitutional. However, if we fail to comprehend the facts as therein stated, and the rule of law applicable thereto, we maintain that, if it was the intention of the legislature to apportion the whole state for legislative representation, and the act, if carried into effect without the void part, failed of its purpose and intent, the whole act should be held void. The court says: "All that the constitution requires is a fair apportionment, the mode by which it is secured being left to the legislature." This, we think, applies to the case at bar. The legislature undertook to make a fair apportionment of the entire state by the act in question. A part of said act is invalid. The representation given by said act applies to only a part of the state, and is made on a different basis, or gives a different representation, from that given by the constitution. We are confronted with the proposition whether the requirement of the constitution as to a fair apportionment can be secured by an act which was intended as a complete and entire apportionment of the state, where part of such act is void, and certain counties or districts are relegated to the apportionment allowed by the constitution, thus giving the people of certain counties a representation on one basis and the people of certain other counties representation on an entirely different basis. We are of the opinion that a just and fair apportionment cannot be secured in that way. It is the opinion of this court that the peremptory writ should not issue, and that the application therefor be denied, and it is so ordered. Costs in favor of defendants.